



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

January 6, 2025

**BY ECF**
Honorable Jesse M. Furman
United States District Judge
Southern District of New York
New York, NY 10007

**Re: *United States v. Bruce Morris*, 24 Cr. 358 (JMF)**

Dear Judge Furman:

The Government respectfully submits this letter regarding the proffered testimony for the defense by Sidney Ford, a witness for which the defendant has provided alibi notice pursuant to Federal Rule of Criminal Procedure 12.1. As explained below, the Government has a good-faith belief that Ford will invoke his Fifth Amendment privilege against self-incrimination if called as a witness at trial. Should the defendant nonetheless call Ford as a witness, the Government respectfully requests that, prior to his testimony and outside the presence of the jury, the Court (1) allocute Ford to his Fifth Amendment privilege against self-incrimination and (2) determine the extent to which Ford intends to invoke that privilege in response to Government cross-examination.

## I. Relevant Facts

Sidney Ford, the defendant's brother, was a co-conspirator in the defendant's drug trafficking organization. *See* Gov't Motions *in Limine* at 6. On November 26, 2024, law enforcement agents approached Ford, who voluntarily provided information to the agents, including that Ford was in his mother's apartment at 868 Faile Street with the defendant, his mother Linda Morris, his minor sister, who he identified by name, and his Aunt Denise. Ford also, however, stated that he did not know the identities of pictures and videos of the defendant and Ford shown to him. Ford then told the agents that he did not want to continue the interview and did not wish to talk further about what happened on the day Jemison was shot. At the conclusion of the interview, agents served Ford with a subpoena to testify before the Grand Jury.

On December 3, 2024, Andrew Dalack of the Federal Defenders of New York was appointed to represent Ford. On December 8, 2024, counsel for the defendant noticed Ford as an alibi witness pursuant to Rule 12.1, five months after the Government's demand for such notice on July 3, 2024.[1] On December 30, 2024, Ford appeared before the Grand Jury, where he invoked

[1] The defendant's Rule 12.1 notice is attached hereto as Exhibit A. As of the date of this motion, Ford is the only alibi witness noticed by the defendant.

his Fifth Amendment privilege against self-incrimination with respect to every substantive question the Government asked. Ford invoked the Fifth Amendment when asked, *inter alia*, whether Ford knew the defendant, where Ford was the day of the murder, if Ford knew who shot Jerome Jemison, and if Ford was part of a drug trafficking conspiracy. Ford confirmed further that it was his intention to invoke the Fifth Amendment with respect to all of the substantive questions the Government would ask in the Grand Jury. Ford then was dismissed.[2]

On December 31, 2024, during a telephone conference, defense counsel stated that, despite invoking his Fifth Amendment privilege in the Grand Jury, Ford remained a potential alibi witness.

## II. Applicable Law

"It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." *Mitchell v. U.S.*, 526 U.S. 314, 321 (1999). Although a witness does not necessarily waive the right to refuse to answer every question by taking the stand, a witness "may not pick and choose what aspects of a subject to discuss." *United States v. Spinelli*, 551 F.3d 159, 166-67 (2d Cir. 2008). Where a witness testifies on direct examination but invokes his Fifth Amendment privilege during examination by the opposing attorney on non-collateral testimony, that testimony is properly stricken. *See United States v. Frank*, 520 F.2d 1287, 1292 (2d Cir. 1975); *see also United States v. Shakur*, No. 84 CR 220 (CSH), 1987 WL 12403, at *1 (S.D.N.Y. June 11, 1987) (extending rule allowing the striking of defense witness testimony to *Franks* hearing context). Thus, the Second Circuit, as well as the First, Fourth, Sixth, Eighth, Ninth, and D.C. Circuits, have approved the striking or precluding of defense proffered witnesses where the witness intends to or does invoke the privilege against self-incrimination on non-collateral matters. *See Frank*, 520 F.2d at 1292 ("In this situation the Government is surely entitled to the protection of the same rule against admissibility of non-collateral testimony not subject to cross-examination as is a defendant.").[3]

---

[2] The transcript of Ford's testimony is being submitted under seal as Exhibit B.

[3] *accord United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 640 (9th Cir. 2012) ("We have long held that a district court may strike the testimony of a witness in a criminal proceeding to avoid a witness's improper use of the Fifth Amendment privilege against self-incrimination as a sword as well as a shield."); *United States v. Davis*, 690 F.3d 912, 923 (8th Cir. 2012), *judgment vacated on other grounds*, 570 U.S. 913 (2013) (approving the striking of testimony after defense witness's "refusal to identify his drug source prevented the government from being able to fully cross examine [the witness] by testing his assertion that he had not engaged in drug transactions with [the defendant]" (internal quotation marks omitted)); *United States v. Coleman*, 453 F. App'x 640, 644 (6th Cir. 2011) ("Although the prosecutor's interest in cross-examining [a defense witness] is not rooted in the Constitution, one of the legitimate demands of the adversary system is the right of cross-examination."); *United States v. Gary*, 74 F.3d 304, 309 (1st Cir. 1996), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015) ("Courts have not permitted defendants to call witnesses to the stand who have indicated that they will refuse to answer the government's questions on cross-examination with respect to non-collateral matters."); *United States v. Esparsen*, 930 F.2d 1461, 1470 (10th Cir. 1991) ("The trial court correctly struck

**III. Discussion**

If the defendant intends to call Ford as a witness, the Government proposes that the Court conduct a proceeding outside the presence of the jury. At such a proceeding, the Court could ensure that Ford understood his Fifth Amendment rights and the risks of waiver in answering questions that may implicate his own criminal conduct. *See United States v. Valdez*, 16 F.3d 1324, 1331 (2d Cir. 1994) ("[A] district court certainly has the discretion to ensure that a witness in danger of unwittingly incriminating himself is aware of his constitutional privilege."). If Ford indicates that he intends to invoke his Fifth Amendment rights, the Court could evaluate the scope of that invocation, which will allow the Court to determine whether certain topics were collateral or so central to the proffered testimony as to require preclusion of the entirety of Ford's testimony. *See Gary*, 74 F.3d at 310 (approving the preclusion of testimony following "a voir dire hearing to determine whether the subject matter concerning which the [defense] witness intended to assert the Fifth Amendment was collateral").

---

[the defense witness's] testimony because [he] refused to answer questions on matters going to the heart of his direct testimony."); *Lawson v. Murray*, 837 F.2d 653, 656 (4th Cir. 1988) (finding the trial court properly struck testimony of a witness invoking the Fifth Amendment who "was clearly attempting to say just enough to exonerate [the defendant] without implicating himself" and "was trifling with the truth" because the "prosecutor was entitled to closely examine the witness ... to expose to the fact finder [the witness's] falsification"); *United States v. Doddington*, 822 F.2d 818, 822 (8th Cir. 1987) (citing the Second Circuit's *Frank* case, noting "[w]e also reject [the defendant's] argument that the District Court abused its discretion and denied him due process of law when it struck [the defense witness's] testimony in its entirety after [he] persisted in asserting his Fifth Amendment privilege against self-incrimination."); *United States v. Reese*, 561 F.2d 894, 901 (D.C. Cir. 1977) ("The trial court's statement that [the witness] must testify, if at all, to the "whole thing," recognized . . . the rule that a witness may not testify as to the broad outlines of a matter and then assert a privilege as to the particulars.").

Here, the Government's evidence establishes that Ford was a co-conspirator in the defendant's narcotics trafficking organization. It establishes also that Ford was with the defendant shortly after the defendant murdered Jemison and fled from the scene. The Government has a good faith basis to believe that Ford lied to protect his brother, the defendant, when Ford claimed to federal agents that he did not recognize himself or the defendant in surveillance footage at the building they fled to after the murder. These topics are neither collateral to the defendant's potential alibi testimony nor lacking in jeopardy to Ford. If Ford seeks to invoke his right against self-incrimination as to any of these topics, therefore, Ford's testimony should be excluded in its entirety. *See Frank*, 520 F.2d at 1292.[4]

Respectfully Submitted,

EDWARD Y. KIM
Acting United States Attorney

By: /s/
Jeffrey W. Coyle / Camille L. Fletcher /
Matthew Weinberg / Jaclyn Delligatti
Assistant United States Attorneys
(212) 637-2437 / 2383 / 2386 / 2559

cc: All Counsel (by Email and ECF)

[4] In its meet and confers with counsel for the defendant, defense counsel has continued to maintain that they may call Ford without committing to doing so. Until the Court has had an opportunity to conduct the inquiry describe herein, the Government respectfully submits the Court should preclude the defendant from opening about or otherwise referencing Ford's testimony.